# Welty *v.* Parry, Appellant.

*Contract—Sale—Failure to deliver goods—Purchase of other goods on the market—Written contract—Shortage of cars.*

Where purchasers of lumber notify the sellers that deliveries are being delayed in violation of a contract, and notify the sellers that if the goods are not delivered by a date stated, they will go into the market and buy similar lumber and charge the sellers with the difference in price, and the sellers respond that they will make no further delivery, the purchasers may immediately purchase other lumber without waiting for the expiration of the time mentioned in their letter.

In such a case the test of the question of market value is the price at the place where the sellers engaged to deliver the lumber.

Where the contract of sale in such a case was in writing, testimony on the part of the sellers to show what passed prior to the making of the contract, and any conditions attached to the contract, is properly excluded.

Where a shortage of cars is set up as an excuse for the nondelivery of goods and counsel of both parties concede that such shortage had to be general, the refusal of the court to allow proof of local shortage is not reversible error.

Argued Nov. 1, 1916. Appeal, No. 176, Oct. T., 1916, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1912, No. 3634, on verdict for plaintiff in case of George H. Welty and Charles Wunderly, co-partners, trading as Nazareth Coal & Lumber Co. *v.* Charles K. Parry, trading as Charles K. Parry & Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit to recover damages for the breach of a written contract to sell and deliver lumber. Before Mc-MICHAEL, P. J.

At the trial it appeared that in September, 1912, the plaintiff by letter ordered certain lumber, and on October 1, 1912, the defendant accepted the said orders and the contract, which is the basis of this suit, is founded

thereon.   On November 6th, the plaintiff advised the defendant by letter that unless the lumber ordered was shipped by November 16th they would purchase elsewhere, and charge the defendant with the difference.   On November 8th, the defendant acknowledged receipt of the said letter and advised the plaintiff that they considered the contract cancelled.   The plaintiff thereupon made purchases from various lumber companies at an increased expense of $353.74, and to recover this amount, brought suit on January 17, 1913, against the defendant.

Defendant made the following offer:

"Mr. Schell: I offer to prove by this witness that in the months of September, October and November, 1912, there was a congestion on the railroads, and the railroad company refused to furnish any cars to the defendant, and that the mill was stocked with lumber that could not be moved, and that it was a physical impossibility to get it up in the time specified by the letter of the Nazareth Coal and Lumber Company demanding shipment by November 16, 1912, by reason of the fact that the railroad company would not furnish cars for that purpose.

"Mr. Martin: In so far as this offer applies to Mr. Parry's condition around his own mill, I do not think it is relevant at all, unless there was a shortage of cars throughout the country.

"Mr. Schell: I think I will be able to show that that shortage of cars existed all through the South.

"Mr. Martin: I object as long as the condition was a local condition.

"By the Court:

"Q. Do you know how far the shortage extended?

"A. We had a great deal of trouble at that time at other mills besides this particular mill."

Objection.   Objection questioned.   Exception.   (7)

"1. That the plaintiff's letter of November 6, 1912, addressed to Charles K. Parry & Company, the defendant, and offered in evidence, a copy of which follows, was not

a cancellation of the contract on the part of the plaintiff (here follows the letter of November 6, 1912) :

　　　　　　　　　" 'Nazareth, Pa. Nov. 6, 1912.

" 'Messrs. Chas. K. Parry Company,

　" 'Land Title Building,

　　" 'Phila., Pa.

" 'Gentlemen :

　" 'Your letter received today and contents noted.　As we understand your letter you cannot ship car of hemlock and also Yellow Pine Sizes and Spruce.　We have placed this order with you in good faith and you accepted it and have made us wait to this day before you notified us that you could not ship.　We ask you to have this order shipped not later than November 16th and if same is not shipped by that time we will go in the open market and buy same and what we have to pay more than we have to give you we hold you to make good.　Please look into this matter and have same shipped by that time. We remain　　Yours truly,

　　　　　　　　" 'Nazareth Coal & Lumber Co.' ' "

　Answer affirmed.　(8)

"3.　If jury believe under all the evidence that the price plaintiffs paid for the lumber to fill the order which defendant refused to ship was a fair market value for such at the time and place set forth for delivery, then your verdict should be for the plaintiffs in full amount of their claim."　Answer affirmed.　(9)

　Verdict and judgment for plaintiff for $420.93.　Defendant appealed.

　*Errors assigned* were (7) ruling on evidence quoting the bill of exceptions (8, 9) above instructions quoting them.

　*Horace Michener Schell,* with him *Walter Biddle Saul,* for appellant.

　*J. Frederick Martin,* for appellee.

OPINION BY TREXLER, J., March 9, 1917:

On the 30th of September, 1912, the plaintiffs gave to the defendants three written orders for lumber, designating Nazareth, Pennsylvania, as the point of delivery, and the time of shipment "at once." These orders were duly accepted by the defendants. On the 30th of October, the defendants advised the plaintiffs that they were getting behind in their shipments owing to scarcity of cars, and that they could give no definite date of shipment of the lumber ordered. On November 5th they again wrote stating their inability to furnish the car of hemlock ordered and further declining any definite assurance as to the shipment of the remainder of the lumber. On November '6th the plaintiffs wrote to the defendants telling them that they would hold them to their bargain and that unless the lumber were shipped by November 16th, they would go into the open market and buy similar lumber and hold the defendants for the difference in price. This was followed by the defendants' letter declining to ship any of the lumber and advising the plaintiffs that they would have no difficulty in procuring the lumber from other parties. After this definite refusal of the defendants to be bound by their contract, the plaintiffs went into the market and bought the lumber of the kind the defendants had contracted to deliver. Although the contract called for immediate delivery, the learned trial judge held that the question whether the plaintiffs had fixed a reasonable time for the delivery of the lumber was a question for the jury. He left it to them to decide whether the date of November 16th fixed by the plaintiffs gave the defendants a reasonable time in which to ship the lumber.

We take up the matter as it is presented by the appellants in their argument.

1. Although the plaintiffs had fixed the time of shipment as of November 16th, the trial judge allowed them to offer as evidence proof of the price of lumber purchased by the plaintiffs prior to said date. The theory

of the defendants is that plaintiffs were required to wait until the time fixed by them for the shipment of the lumber had passed. When the defendants wrote to the plaintiffs "We will not ship any lumber at all," it definitely settled the question of plaintiffs getting any lumber from them. It was not incumbent upon the plaintiffs to wait until the time had expired. Why require them to do a vain thing and wait after the defendants had avowed that they were no longer bound by the contract? We take the view that as soon as the defendants repudiated the contract and advised the plaintiffs that they could get the lumber elsewhere, that the plaintiffs could take them at their word and go into the open market and supply their needs by purchasing such lumber as the contract called for.

2. Defendants claim that even if this view be correct, it was incumbent upon the plaintiffs to show that they had received the defendants' letter, declining to furnish any lumber, prior to the date the purchases were made in the open market and that plaintiffs, having failed to show this, the items showing purchases before said date were inadmissible. An examination of the records discloses that the only objection to the bills showing the purchases of lumber elsewhere than from the defendants was that they bore date prior to November 16th, the date fixed for the shipment of the lumber by the plaintiffs. This present objection that they bore date prior to the receipt by the plaintiffs of the cancellation of the contract by the defendants is evidently an afterthought. If made at the trial it would have been easily overcome, for an examination of the paper book shows that in the course of dealings between the parties the time consumed in the carriage of letters by post from Philadelphia to Nazareth was far less than that elapsing between the date of defendants' letter, to wit, November 8th, and the dates of the bills.

3. A witness was put on the stand for the purpose of testifying to the market price of lumber at the time of

the alleged breach. This was the only subject upon which he was questioned by the plaintiffs. The defendants asked the witness whether mills carry lumber of the size and kind shown in one of the bills, in stock. The court sustained the objection. We see no error in this. The question bore no apparent relation to the subject of the examination in chief.

4. As to the question of market value the test is the price at the place where the defendants engaged to deliver the lumber: Kountz v. Kirkpatrick, 72 Pa. 376.

5. The written contract is supposed to be the final expression of the minds of the parties contracting. Testimony on the part of the defendants to show what passed prior to the making of the contract and any conditions attaching to the contract, was properly excluded by the court. If the defendants wished to show that the written order was not the entire contract of the parties they should have made an offer of proof showing upon what theory of law they claimed the right to modify it.

6. There was an offer to prove that there was a shortage of cars and that the defendants were thus unable to comply with their contract within the time set by the plaintiffs. The counsel of both parties appear to have conceded that such shortage had to be general. The court excluded proof of local conditions showing a lack of cars. Whether this was strictly correct or not we need not discuss. In view of the position taken by the parties we cannot regard the refusal of the court to allow proof of local shortage, as reversible error.

All assignments of error are overruled and the judgment is affirmed.